ORDERED.

Dated: December 06, 2019

_Jerry A. Funk_
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
www.flmb.uscourts.gov

In re:                                                                 Case No. 3:12-bk-4004-JAF

Samuel A. Ferris                                                Chapter 13
Jessie M. Ferris,

Debtors.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court for trial upon the Debtors' Amended Motion for Sanctions against Seterus Inc.[1] (the "Amended Motion for Sanctions"). (Doc. 61). The Court conducted a trial on the Amended Motion for Sanctions on June 10, 2019 and directed the parties to submit post-trial memoranda. Upon the evidence and applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

On June 15, 2012, the Debtors filed a petition under Chapter 13 of the Bankruptcy Code. (Doc. 1). On their Schedule D, the Debtors listed Homeward Residential, Inc. as a secured creditor

---

[1] By order dated April 23, 2019, Nationstar Mortgage, LLC d/b/a Mr. Cooper ("Mr. Cooper") was substituted for Seterus Inc. ("Seterus") as the respondent in this matter. (Doc. 89).

holding a mortgage on their homestead property in St. Augustine, Florida. On October 14, 2012, the Court entered an Order Confirming the Debtors' Chapter 13 Plan (the "Confirmation Order"). (Doc. 18). The Confirmation Order provided for the Debtors to maintain their mortgage payments and to cure their $7,856.59 mortgage arrearage to Homeward Residential, Inc. through their Chapter 13 plan. On April 25, 2013 and June 5, 2013, respectively, the Debtors filed Proof of Claim 16-1 and Amended Proof of Claim 16-2 on behalf of Homeward Residential, Inc. c/o Ocwen Loan Servicing, LLC. The claims reflected the $7,856.59 arrearage provided for in the Debtors' confirmed Chapter 13 plan.

On July 7, 2014, Claim 16 was transferred from Homeward Residential, Inc. to Ocwen Loan Servicing, LLC. (Doc. 28). On October 6, 2015, Ocwen Loan Servicing, LLC transferred Claim 16 to Federal National Mortgage Association ("FNMA") c/o Seterus, Inc. as the new servicer. (Doc. 33). The Debtors continued to make their payments in accordance with the plan to Seterus as the new servicer.

The Debtors completed their Chapter 13 plan on June 13, 2017. (Doc. 45). On August 7, 2017, the Chapter 13 trustee filed a notice indicating that the Debtors had made all of the payments required by their Chapter 13 plan. (Doc. 40). On August 8, 2017, the Court entered a Discharge of Debtor[s] after Completion of Chapter 13 Plan. (Doc. 41).

On August 10, 2017, the Chapter 13 Trustee filed a Notice of Final Cure Payment related to Claim 16. (Doc. 42). FNMA filed a Response to the Trustee's Notice, asserting that post-petition payments owed as of March 1, 2017 were still due and owing. On September 14, 2017, the Trustee filed a Motion for Determination of Final Cure, asserting that the Debtors had made their mortgage payments through June 2017. (Doc. 44). On November 7, 2017, FNMA responded to the Trustee's Motion, agreeing that the Chapter 13 Trustee had made the payments through June

1, 2017 and that the Debtors were due for the July 1, 2017 payment. (Doc. 49, ¶¶ 7, 8). Based on FNMA's response, the Trustee withdrew his Motion for Determination of Final Cure (Doc. 50), and the bankruptcy case was closed on November 14, 2017. As such, the Debtors were due for the July 2017 mortgage payment.

After the discharge was entered, the Debtors continued to make their monthly mortgage payments to Seterus despite not receiving monthly statements. On August 29, 2017, Debtor Jessie Ferris faxed a letter to Seterus stating "this letter is an attempt to get information on our loan, as we have not received anything from your company following our discharge." (Debtors' Ex. 3). The Debtors did not receive a response from Seterus.

On April 10, 2018, Seterus sent a letter to the Debtors indicating that their loan was in default due to non-payment of approximately $6,300.00 and that failing to pay that amount by May 15, 2018 could result in a foreclosure and sale of the property. (Debtors' Ex. 4). The first post-discharge monthly statement the Debtors received was dated April 13, 2018 and indicated that the Debtors owed a past-due payment of approximately $7,000.00, which represented four monthly payments. (Debtors' Ex. 5).

On April 30, 2018, Seterus sent a letter to the Debtors in the care of their attorney, which was identical to the April 10, 2018 letter other than that it indicated a default due to non-payment of approximately $4,600.00. (Debtors' Ex. 4). On May 8, 2018, the Debtors' attorney sent Seterus a letter with the subject line "Notice of Violation of Order of Discharge" in bold. (Debtors' Ex. 6). The letter provided a detailed history and explanation of why the Debtors' mortgage payments were current. The letter also indicated that Seterus had sent the Debtors two default letters and stated: "We are in receipt of the full payment records from both the Bankruptcy Trustee and your Company. Based on the information and evidence in our possession, we believe your allegations

that the Loan is in default are unfounded and your actions are in violation of the Order of Discharge entered on August 7, 2017." The letter was sent by fax and U.S. mail and was directed to the attention of Seterus' legal department.

Despite Seterus' receipt of the letter, it continued to send monthly statements and default notices to the Debtors in care of their attorney. The third, fourth, and fifth default letters were dated June 1, 2018, June 29, 2018, and July 31, 2018 and indicated respective past due amounts of $6,400.00, $4,700.00, and $4,700.00. (Debtors' Ex 4). The monthly statements were dated May 10, 2018, June 8, 2018, and July 11, 2018 and indicated a past due amount of approximately $7,000.00, which represented four monthly payments. (Debtors' Ex. 5).

Between July 2 and July 24, 2018, Seterus called the Debtors' attorney's office 81 times for the purposes of soliciting loan modification options and inquiring about the Debtors' alleged arrearages. (Debtors' Ex. 12).

The Debtors reopened the case in July 2018. (Docs. 53, 54). On August 3, 2018, the Debtors filed the Amended Motion for Sanctions. (Doc. 61). Therein, the Debtors alleged that "Seterus continues to demand payment from the Debtors for the amounts due on the Mortgage between March and June 2017," both by written communications and telephone and that Seterus had wrongly informed credit reporting agencies that the Debtors were in default on the mortgage. The Debtors asserted that the conduct violated the discharge injunction and that they had suffered damages as a result of the violations. (Doc. 61, ¶¶ 24-28).

Both during July 2018 and November 2018, while the Motion for Sanctions was pending, Seterus incorrectly reported to credit bureaus that payments on the Debtors' mortgage were

delinquent.  As a result of the incorrect July 2018 reporting, Jessie Ferris' credit score decreased by over 100 points. (Debtors' Ex. 14).[2]

In October 2018, after the Amended Motion for Sanctions was filed, Seterus sent a letter regarding a proposed mortgage modification to the Debtors in care of their attorney.  (Debtors' Ex 13).

On March 1, 2019, Claim 16 was transferred from Seterus to Mr. Cooper.  (Debtors' Ex. 17).  On March 22, 2019, Mr. Cooper sent the Debtors a statement indicating they owed a past unpaid amount of approximately $9,000.00.  (Id.)  On April 18, 2019, Mr. Cooper sent the Debtors a statement in care of their attorney indicating they owed a past unpaid amount of approximately $10,800.00.  (Id.)  On May 20, 2019, Mr. Cooper sent the Debtors a statement in care of their attorney indicating they owed a past unpaid amount of approximately $12,600.00.  (Id.)

At the trial on the Amended Motion for Sanctions, Mr. Cooper alleged that the entire chain of events set forth herein resulted from the Debtors listing an incorrect arrearage amount in their proof of claim.  However, Homeward Residential, Inc., which owned the mortgage from the date of the filing of the case until July 7, 2014, neither filed an amended proof of claim nor objected to confirmation of the Debtors' plan. Ocwen Loan Servicing, LLC, which owned the mortgage from July 7, 2014 until October 6, 2015, also took no action in the case.  FNMA/Seterus, which acquired the mortgage on October 6, 2015, took no action in the case other than to file Notices of Mortgage Payment Change, which reflected post-petition increases in Debtors' escrow account, on October 9, 2015 and October 26, 2016.

---

[2] The Debtors also allege that Samuel Ferris' credit suffered as a result of Seterus' inaccurate reporting to credit bureaus, but they offered no evidence to that effect.

5

At the trial on the Amended Motion for Sanctions, Mr. Ferris testified that when the Debtors were making their mortgage payments through their Chapter 13 case, there were no issues, and the Debtors' marriage was good. However, Mr. Ferris testified that as a result of the default letters and various correspondence from Seterus and Mr. Cooper, his temper is short, and he suffers from depression, anxiety, and insomnia. He testified that his wife suffers from depression, anxiety, insomnia, and also contracted shingles. Moreover, Mr. Ferris' relationship with his adult daughters, who live with the Debtors, has been negatively affected.

## **Conclusions of Law**

Section 524 of the Bankruptcy Code operates as a post-discharge injunction against the collection of debts discharged in bankruptcy and is thus the embodiment of the Code's fresh start concept. Hardy v. United States (In re Hardy), 97 F.3d 1384, 1388-89 (11th Cir. 1996). "Section 524 is intended to ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it." In re McLean, 794 F.3d 1313, 1321 (11th Cir. 2015) (quoting H.R.Rep. No. 95-595, at 366 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6321) (emphasis omitted). Section 524(a)(2) provides that a bankruptcy discharge operates as an injunction against "an act, to collect, recover or offset" a discharged debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2). Additionally, § 524(i) provides that a creditor's willful failure to credit payments received under a confirmed plan constitutes a violation of the injunction under § 524(a)(2) if the creditor's failure caused material injury to the debtor. 11 U.S.C. § 524(i).

The Court must first determine whether Seterus and Mr. Cooper willfully failed to credit payments received under the Debtors' confirmed plan. The Court finds that willfulness in the context of § 524(i) requires only that the creditor intended to credit payments improperly, not that it intended to violate the Code or the plan provisions. See In re Ridley, 572 B.R. 352, 362 (Bankr.

E.D. Okl. 2017). "Absent a creditor's proof that the improper crediting was a mistake in conflict with the creditor's normal procedures, the creditor should be presumed to have intended its acts." 4 Collier on Bankruptcy ¶ 524.08 (16th ed.).[3]

Here, Seterus was put on notice by the Trustee's Motion for Determination of Final Cure that the Debtors had made their mortgage payments through June 2017 and in fact acknowledged such in its November 7, 2017 Response to the Trustee's Motion for Determination of Final Cure. (Doc. 49). Despite this concession, however, Seterus (and later Mr. Cooper) failed to properly credit the March through June 2017 payments and, from April 2018 until May 2019, bombarded the Debtors with letters and notices demanding payment of the already paid amounts. Mr. Cooper failed to prove that Seterus' and Mr. Cooper's failure to properly credit the payments was in conflict with their normal procedures. The record before the Court clearly supports a finding that Seterus and Mr. Cooper willfully failed to credit the payments.

Mr. Cooper's belated argument, raised for the first time at the trial on the Amended Motion for Sanctions, that Seterus' and Mr. Cooper's conduct in this case resulted from the Debtors listing an incorrect pre-petition arrearage amount on the proof of claim, is unavailing. The provisions of a confirmed Chapter 13 plan bind the debtor and creditor, 11 U.S.C. § 1327, and the binding effect of a confirmed plan encompasses all issues that were or could have been litigated by the parties.

---

[3] The Eleventh Circuit Court of Appeals has held that "the test for whether a creditor violates the discharge injunction under 11 U.S.C. § 524(a)(2) is whether the objective effect of the creditor's action is to pressure the debtor to repay a discharged debt." In re McLean, 794 F.3d at 1322. A creditor may be held in civil contempt for violating a discharge order where there is not a "fair ground of doubt" as to whether the creditor's conduct might be lawful under the discharge order. Taggart v. Lorenzen, 139 S.Ct. 1795, 1801 (2019) (rejecting "strict liability standard" set forth in In re Hardy, 97 F.3d 1384, 1390 (11th Cir. 1996) and noting that such a standard would "authorize civil contempt sanctions for a violation of a discharge order regardless of the creditor's subjective beliefs about the scope of the discharge order, and regardless of whether there was a reasonable basis for concluding that the creditor's conduct did not violate the order.") These cases do not apply to the instant case because the issue before the Court is not whether Seterus and Mr. Cooper attempted to collect a discharged debt but whether they willfully failed to credit payments received under the Debtors' confirmed plan, and, if so, whether such failure caused material injury to the Debtors.

See In re Gonzalez, 832 F.3d 1251, 1258 (11th Cir. 2016); In re Berrouet, 469 B.R. 393, 396 (Bankr. N.D. Ga. 2012) ("Confirmation of a Chapter 13 plan is essentially an adjudication of litigation over the issues of the classification and treatment of claims provided for in a proposed Chapter 13 plan, and is res judicata on those issues."); In re Franklin, 448 B.R 744, 748 (Bankr. M.D. La. 2011) (holding that mortgage creditor was bound by prepetition arrearage listed in confirmed plan when it failed to file a timely proof of claim asserting a larger arrearage).

The Court also finds that Seterus' and Mr. Cooper's willful failure to credit the payments caused material injury to the Debtors as further explained below.

**Attorney's Fees**

The Debtors seek attorney's fees and costs of $20,213.10. The Debtors' attorney asserts that he and his firm spent a total of 73.2 hours on this matter, 69.7 of which represents attorney time at an hourly rate of $250.00 and 3.5 of which represents attorney time at an hourly rate of $350.00, for a total of $18,650.00. Debtors seek an additional $1,500.00 in fees for trial preparation and attendance and costs of $63.10. Under federal law, attorney's fees are awarded based upon the lodestar method of computation. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-718 (5th Cir. 1974). In determining whether an attorney's fee is reasonable, a court must determine the lodestar, the product of the number of hours reasonably expended and a reasonable hourly rate. See John Deere Co. v. Deresinski (In re Deresinski), 250 B.R. 764, 768 (Bankr. M.D. Fla. 2000) (citations omitted). In order to apply the lodestar method an attorney must provide the Court with contemporaneous time records detailing the dates, amount, and specific services provided. See In re Newman, 2003 WL 751327 *3 (Bankr. M.D. Fla. Feb. 18, 2003) (citing In re First Colonial Corp. of America, 544 F.2d 1291, 1300 (5th Cir.1977)). A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by

lawyers of reasonably comparable skills, experience, and reputation. Blum v. Stenson, 465 U.S. 886, 895–896 n. 11 (1984). Upon a review of the Debtors' attorney's contemporaneous time records detailing the dates, amounts, and specific services provided, the Court finds the fees sought are reasonable and will award the total amount sought, as well as the costs.

## Emotional Distress

In order to recover damages for emotional distress for a violation of the discharge injunction, a debtor must clearly establish that he suffered significant emotional distress and demonstrate a causal connection between the significant emotional distress and the violation of the discharge injunction. In re Mclean, 794 F.3d 1313, 1325-1326 (11th Cir. 2015) (citing Lodge v. Kondaur Capital Corp., 750 F.3d 1263, 1271 (11th Cir. 2014)). "[C]orroborating evidence may not be necessary to prove emotional distress where the violator engaged in egregious conduct and significant emotional distress is readily apparent." Lodge, 750 F.3d at 1272 (citing Dawson v. Wash. Mut. Bank, F.A. (In re Dawson), 390 F.3d 1139, 1149-50 (9th Cir. 2004)). Mr. Cooper suggests an award "if any" of $250 per month for ten months, representing the period from November 2017, when the Court found that the Debtors fulfilled all requirements under the plan, until August 2018, when the Debtors filed the Amended Motion for Sanctions, for a total of $2,500.00. The Court rarely awards emotional distress damages for violations of the automatic stay or discharge injunction. However, the Court finds the actions in this case to be egregious, intentional, and protracted. Debtors completed their Chapter 13 case in June 2017, a feat accomplished by only approximately 42% of Chapter 13 Debtors in the Jacksonville Division during the last five years. However, rather than receiving the fresh start they earned, the Debtors were instead subjected to a perpetual state of uncertainty, stress, and anxiety. Their August 29, 2017 letter to Seterus was met with silence, which continued until April 10, 2018, when Seterus

sent the Debtors a letter indicating they were in default of approximately $6,300.00 and could lose their home to foreclosure. Despite the April 30, 2018 letter from the Debtors' attorney to Seterus, which stated in bold "Notice of Violation of Order of Discharge" and provided a detailed history and explanation of why the Debtors' mortgage payments were current, the barrage of letters and notices demanding payment that began on April 10, 2018 continued until at least May 20, 2019. Additionally, both during July 2018 and November 2018 Seterus incorrectly reported to credit bureaus that the Debtors were in default, resulting in a lowering of Jessie Ferris' credit score of 100 points. The Court finds that Samuel Ferris' testimony as to the Debtors' emotional distress is credible and adequately supports a claim for damages for emotional distress. In view of the particular facts of this case and the protracted nature of the discharge violations, the Court finds that the Debtors are entitled to $10,000.00 in emotional distress damages.

## Punitive Damages

Punitive damages serve both as a punishment for wrongful conduct and as a deterrent of future wrongful conduct. In re White, 410 B.R. 322, 327 (Bankr. M.D. Fla. 2009). The imposition of punitive damages for a violation of the discharge injunction is appropriate when the violator acts in an egregious, intentional manner. In re Nibbelink, 403 B.R. 113, 122 (Bankr. M.D. Fla. 2009). As the Court noted it its discussion of emotional distress damages, Seterus' conduct in this case was egregious and intentional. The Court will award punitive damages of $25,000.00.

## Conclusion

Debtors' mortgage servicers, Seterus and Mr. Cooper, willfully failed to credit payments received under the Debtors' confirmed Chapter 13 plan, resulting in material injury to the Debtors. As a result, the Debtors are entitled to attorney's fees, emotional distress damages, and punitive

damages. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

Alex C. Najarian, Esq. is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and file a proof of service within three days of entry of the Order.